Circuit. Our first case this morning is United States v. Burrows, number 24-2766. And we'll hear from Pellant's lawyer. Good morning. Good morning. Please the court. My name is Jason Bologna. I represent Brian Burrows. I'd like to reserve two minutes from my rebuttal. That'll be granted. Thank you. According to the government, Brian Burrows' only speedy trial right was the right to be tried with John Doherty. If John Doherty was not ready for trial, then Brian Burrows just had to wait. The government's approach here ultimately meant that the rights of Brian Burrows were subordinate to the rights of John Doherty. This isn't the first time this kind of thing has happened. I mean, we'd be here for a different reason if the district judge didn't take seriously Doherty's right to counsel. Your Honor, I think it's important to recognize that Mr. Burrows has never said John Doherty's right to counsel is unimportant or should not have been respected by the court. What Mr. Burrows said is that the choice does not necessarily need to be between Mr. Doherty's Sixth Amendment rights on the one hand and Mr. Burrows' Sixth Amendment rights to a speedy trial on the other hand. That's the dynamic that the government has set up here, where basically they said, no, we need to protect Mr. Doherty's rights and continue the case. And our position is that the court had an opportunity and the government had an opportunity to sever Mr. Burrows' case and protect both Sixth Amendment rights. That was our position at the district court and remains our position today. What we are saying today is that the law must treat both of these men as equal and that the government and its handling of this case at the trial level failed to do that. As a result, on June 5th of 2023, Mr. Burrows, through his trial counsel, Mr. Burks and Mr. Kasten, who are seated here, filed a motion alleging violations of two things, his Sixth Amendment right to a speedy trial and his rights under the Speedy Trial Act. As of that filing, 53 months had passed since arraignment. Mr. Burrows... So why not sooner? Why not file the motion sooner? Yeah. Good question. I think the procedural history matters. So the very first trial date, Your Honor, that Mr. Burrows got in this case, he was arraigned back in 2019. The very first chance he had to go to trial was in October of 2023. Excuse me, 2022. A month and a half before that trial, his trial counsel, knowing that Daugherty had already been tried on the public corruption case, had already had his trial counsel from Bowery-Spire move to get off the case, they file a motion to sever. The goal of the motion to sever is for Brian Burrows to go to trial on his very first trial date, which is in October of 2022. He never gets that chance. And the reason he doesn't get that chance is because the judge issues a sua sponte order continuing the trial that is issued in September of 2022, and it continues the trial to January. Can I just... Because you sort of... You jumped to this October 2022 period. Yes. How should we be thinking about the time period here that you're challenging? Are there certain parts of this? For example, the COVID standing orders that you concede and you want us to focus on when we think about the Barker argument and the Speedy Trial Act? Sure. I would say that all of the periods are important, but the most important period, especially as it relates to the Speedy Trial Act, is the period in the late 2022, in particular, from January 9th of 2023 through the filing of the motion in June of 2023. That is the most important period. I would note, in response to what this court directed parties to do, you asked me to show up in an address, the legal basis for lack thereof for imposing a requirement that a district court revisit its complexity determination. You asked me to do that. And to answer your question, I think the most important period is to look at the orders from the fall of 2022 into the beginning of 2023. Your Honors, I would ask the court to look at the decision made in this circuit, actually addressing the same district court judge, as was the trial judge in this case, and in particular, the decision in Adams, in which this court wrote, the district court may enter a continuance without citing the act or referencing the ends of justice so long as the court explains a valid, factual basis for the continuance on the record and in a manner that shows the court, quote, balance the interests of the public and of all the defendants. Returning to your question, Judge Beauvais, we have all looked at the January 9th, 2023 order of this court. In that order, Mr. Burroughs is not mentioned at all. The caption reads, United States of America versus John Doherty, and the text of the order discusses the right of a defendant, singular, not plural. There is no balancing. Speaking for myself, I'm open to the arguments you're making about the complexity of exclusions because those are arguments that I think are couched in statutory text and arguments that are couched in a fair look at the context of what happened here. But this argument that you're making right now seems quite formal. We're talking about the caption on an order. Are there things that actually under our case law should give us pause about that January 2023 exclusion? Yes. And in response to your point, Your Honor, the thing that should give you pause is that if there's going to be a continuance on the basis of complexity, it would be reasonable to expect complexity to be discussed in some way, shape, or form in the order. And if there's to be balancing, as is required by the case law, you'd expect there to be a balance in which Mr. Burroughs would be acknowledged, at least in some way, in the  That did not happen. Further, the next order, which was in April of 2023, you would again expect, based on your question, Your Honor, you would expect some textual analysis of the Speedy Trial Act. Where are we saying that the Speedy Trial Act justifies the continuance? Indefinitely, in April of 2023. There is none. The thing that's cited is the Sixth Amendment right of John Dougherty to counsel of his choice. That's the decision. That's what the court is basing its continuance on. In response to your question, this court needs to look at what the court is saying in its orders, and what the court is saying on the record, and what the court is saying in its written opinion. The court's written opinion, citing complexity, is issued in September of 2023. The court had opportunities on the record in addressing the parties to talk about complexity. He did not. He had opportunities... Let me just stop you for a minute. In fairness, there's no objection either on this basis, right? So how do we... I understand what your argument is. We asked you to address this, but what's the standard of review here? Is it clear error because it was never raised? I understand the standard of review for this court in assessing the Speedy Trial Act is plenary review of the district court's decision. You're looking at this de novo. And the district court, if it's going to say in its order, as it did in September of 2023, this is a complex case, asks us, as Judge asked me a few seconds ago, to look at the statute. What is the basis of complexity that the court enters in the very beginning of this case? It cites the number of defendants. We went from eight to two. It cites the number of charges. We took 116 and reduced that by over 70 counts. We took two different conspiracies and we reduced them to a single one. And this, while a nuanced point, I believe, Your Honor, is an important one. There is a lot of discovery in this case, but I have not found, and I don't believe the government has cited either, a case in which the same discovery for not one, not two, but three lawyers representing John Doherty is a basis to continue the case over and over again, where Mr. Burroughs was ready at every single trial listing. Complexity justifies a continuance, but how much of a continuance? And as I wrote, and as I say here today, where does this court draw the line? How much is enough? We operate on a principle of party presentation. And there's no motion. There's nothing that would give the district court notice that this is a problem. I respectfully disagree for these reasons. The first is, at the very first opportunity that Mr. Burroughs' counsel had to ask for a speedy trial, which followed the severance of the indictment into two cases, it is undisputed that the district court found that Mr. Burroughs asked that his case go first. That's an undisputed fact in the record. Next, prior to that trial, Mr. Burroughs, through his counsel, moved to sever Doherty off so his case could go. Through no fault of his own, his case ended up listed in January of 2023. This is another important procedural fact, one not acknowledged by the government, and it's written brief. The district court had promised Mr. Doherty, your case shall go forward in January of 2023. Government counsel, trial counsel was there. Mr. Doherty was there. The court was there. Mr. Burroughs' counsel was not. Mr. Burroughs' counsel was not. Government wants you to believe, oh, he waived. He waived it. He didn't waive anything. He had no knowledge that that promise was made in a guilty plea. But can't we just view that as the district court's statement of present intention, and then there's some intervening circumstances and an adjournment that was required? I guess it's difficult for me to put as much weight on that statement as you have in your briefs. I think that the court's intention, Your Honor, matters because the court speaks to the parties through what it says on the record, be it in an opinion, when people appear in court, or through orders. And if the court is telling the parties, and in particular the government, that Mr. Doherty, your case shall go forward, and it doesn't, that should matter to this court because it was Mr. Burroughs who was pushing that this case go forward. Your Honor, I know a bit about your history. I know you were a prosecutor. And I would respectfully say one of the other things that matters here is that Mr. Doherty, unlike most, if not all the other cases I've seen, was a convicted defendant who was facing many years in prison when he was causing these delays. Yeah, I mean, look, I was a prosecutor, and I was a prosecutor during COVID in this same time period. And so I think realistically that leaves me sympathetic to the challenges the district court faced here in circumstances that included Mr. Burroughs being out on bail and the press of other trials in the district, including for detained defendants. And so I don't think that my background is particularly relevant, but realistically, I think when I look at this record, what I see is there's an effort to move these cases forward as best as they could be moved forward. Briefly in response to that, I think it always matters that one of the litigants in a case here, Mr. Doherty, knows that he is going to go to jail. And he is joined with another litigant, in this case, Mr. Burroughs, who wants to go to trial and has a presumption of innocence and is not automatically going to go to jail. And so is this a, it's not a Speedy Trial Act argument, I don't think. It's a Barker argument, right? It is both. It is an argument that- How do we factor this sort of strategic gamesmanship position that you have into the statute? I would point to the government, and I would say that the government has an obligation when it asks that a case be complex, only ask for continuances that are justified under the circumstances and that there are rights that are co-equal to that and greater than that. This is a constitutional right that one of the people they had, they charged, was asserting and they were ignoring. And I hear you on that. And so I guess I would end with, and maybe if you can marshal for us your best prejudice arguments under Barker. My best prejudice argument is the Third Circuit has ruled in a prior case that 45 months under Battis is presumed general prejudice. The court has said that that is the line in which we presume that a litigant will be prejudiced. The time of the filing of this motion, 53 months have passed, and the district court has found that not one of them was due to Mr. Burroughs. Thank you. Your client wasn't incarcerated, right? So he didn't suffer prejudice that way. Your Honor is correct, but that's not the only way a litigant can suffer prejudice. Okay, that's true. Do we have anything else? No. Okay, thank you, counsel. We'll hear on rebuttal. And we'll hear from the government next. Good morning, Your Honor. May I please the court? Robert Zosmar on behalf of the government. I have to take strong exception to a very important statement that my friend, Mr. Bologna, said, and I have great respect for him. But he said, and this is a critical, he started with this argument, that at all times he said it was our position in the district court, it was our position here, that they should be tried separately, Burroughs and Dougherty. That is absolutely incorrect. Mr. Burroughs never filed a motion for severance until the fall of 2022 when he filed a motion for a separate trial for Mr. Dougherty and then withdrew it on the record at the January 2023 hearing when he said he was okay with waiting until May or June to have this trial. Now, he faults the government. Wasn't there a severance motion in 2019 that split up the two categories of charges? So, yes, the severance motion was to sever the cases. And Mr. Burroughs was successful. That was granted by the district court. But once he had a separate embezzlement trial, he did not move to be tried separately in that case. And that's critical. And now he faults the government. He says, well, the government should have tried them separately. Well, no, we shouldn't. The law favors, as we know, a joint trial of defendants charged together for reasons this court has explained an endless number of times. It was incumbent on Mr. Burroughs if he wanted a separate trial to move for it. And he never did. And there's probably a good reason for that. Mr. Burroughs was a less culpable defendant than Mr. Dougherty. Everybody knew Mr. Dougherty ran the show. Let's focus on the Speedy Trial Act. Were the district's standing COVID orders sort of self-implementing in every case in the district for Speedy Trial Act exclusions? The way we presented those, Your Honor, was a judge in each individual case had to apply the chief judge's standing order. And so if you go back and look at the record in the district courts, you'll find an individual order in every case that adopts the chief judge's order. Then I can say without exception, every district judge in this district did adopt Judge Sanchez's findings, including in this case. So the position is that the chief judge, the standing orders, they require some kind of implementation in Mr. Burroughs' case? We actually debated that issue, Your Honor. I'm just asking for what the government's position is. I was responsible for setting that up. We had an internal debate as to whether that was sufficient. We decided we would gild the lily and ask for individual orders in every case, and that's what happened. And so there are, I think, a couple instances on this record where the government sought retroactive exclusions of time under the Speedy Trial Act. Are you defending those in this appeal, the retroactive exclusion? There's probably one retroactive exclusion. If I could talk, Your Honor, a little bit more broadly about the Speedy Trial Act. Focus on my question. Sure. I think the only open-ended continuance... No, not open-ended. Retroactive. So there are, I think, two motions on this record where the government said, we seek an exclusion of time from a date prior to this motion, carrying up through a date after this motion. And what I'm asking about is the retroactive exclusion of time. And my question is whether the government is defending that practice of seeking a retroactive exclusion of time under the Speedy Trial Act. We do, though I also don't think it was necessary for reasons I'll explain. But yes, it is permitted to have a judge enter an order and also explain the order later as long as the explanation is on the record. The retroactive exclusion is consistent with our case law? Yes, sir. But, you know, our primary position here... What authority are you relying on for that? I can't cite that offhand. That wasn't briefed, but I'd be happy to submit authority if Your Honor wishes. But our primary position with regard to the Speedy Trial Act is that the Speedy Trial Act was really off the table from the first complex case designation. That's what never changed. I can't... I mean, the government can't stand up in this court and say that the Speedy Trial Act was off the table. Your Honor, whatever phrase is appropriate, it's very common that a court in a complex case, which it certainly was, enters a complex case order at the beginning of the case, and that carries through until the trial may occur. Maybe it shouldn't be common when the period is almost four years, and there are intervening ends of justice exclusions that don't reference complexity. In this case, there was a perfectly appropriate explanation for every extension that took place. We had initially the case without... And again, there was never any objection to any of these designations. I mean, the Speedy Trial Clock is a statutory command to the government, and so I think that in the sort of practical analysis of this, some weight is probably owed to the fact of the way that it's litigated by the defense, but it's ultimately the government's obligation to give a defendant that the government chose to try a trial within the period mandated by the Act. So I don't really view that as sort of helping you out much on the Speedy Trial Act. Your Honor, the government never delayed this case at all. The government actually insisted on expedition more than Mr. Burroughs did. When the delays fostered by Mr. Daugherty's counsel issues came up, the government repeatedly urged the district court to expedite as best it could while respecting Mr. Daugherty's rights, and the government protested more than Mr. Burroughs. Mr. Burroughs did not file the Speedy Trial Motion or present any complaint at all until June of 2023. The government acted as best it could at every stage in a difficult, complex case. You had the pandemic, and then after the pandemic, there was a trial. There was the corruption trial. After that, it was one counsel problem after another. Within a few months, Mr. Daugherty's counsel withdrew. Then he didn't retain new counsel. Then counsel was appointed. Then a few months later, Mr. Daugherty got money and wanted to retain counsel. Well, everything you're saying right there, it speaks to me in terms of what happened here, and certainly the Barker analysis. But on the question that we asked for focus on, the statutory question, how can it be that one complexity finding in 2019 carries through for four years like that? So, as it turns out, the judge made findings along the way. We are not relying solely on- I think that's an interesting part of this to me, is that there are some instances where there are ends of justice exclusions that cite complexity subsequently, and there are others that don't. When I look at the text of the statute, complexity is one consideration that can support an ends of justice exclusion. And so, if there's an instance where a judge makes a subsequent exclusion and doesn't cite complexity as a statutory matter, it's just difficult for me to track why this complexity finding in 2019 still applies. That's a fair point, and let me focus specifically on the two orders that are relevant here that my friend is focusing on. They're challenging the period only from January 9th of 23 until June 5th of 23. There are two orders that matter. The first is the order on January 9th of 2023, and Your Honor is, of course, correct that it doesn't say complexity. It instead is relying on B1, which is the miscarriage of justice exception. That order on January 9th, by itself, is a fully sufficient speedy trial extension. And the reason is, is that that was based on an unopposed motion that was filed by Ms. Quinn Quanto, the appointed attorney for Mr. Daugherty. It was unopposed by everyone. And do you need complexity? Do you need to be relying on this? No, we don't. And that's why I had said our initial position, and now I get to get to our further position. We do not need complexity for the period from January 9th until April 28th. And that, by itself, eliminates the speedy trial issue, because there's less than 70 days left after that until the motion. How many days are left? There are, I think, about 42 days from April 28th until June 5th, when the motion is filed, roughly. Why doesn't it extend to November 2nd, the day the trial began? Well, so then what happens, if I can focus on the second order, that first order, by the way, again, to be clear, relies on B1, miscarriage of justice, exactly what Ms. Quinn Quanto put forward. And the judge adopts what happened at that hearing and everybody's consent. And that's the hearing at which Mr. Burroughs' counsel says, I'm fine with May or June, which, again, gets you through this entire period. The April 28th order, to focus on that, that is the open-ended continuance. That's where everything is going a little haywire. He has now come into money. He wants to retain counsel. And so the judge says, look, I'm just going to put off the trial. We're going to have a hearing. We're going to figure this out. And then in June, enters the order scheduling an October trial date. That is open-ended. And of course, what this court has said is that a court can later put on the record its reasons for the open-ended continuance. The reasons there were complexity. And we see that in the court's September 8th order. That's the order that denies the speedy trial motion. That's page 5 of the appendix. And the court there says in detail that this case is complex. And the fact that we've lost a few defendants has nothing to do with that. It's so complex based on the nature of the charges, all these motions that are being filed, this enormous amount of discovery. So we're covered for that speedy trial period. So if it was still complex in September of 2023, I think there's another adjournment request where the government says, no, this one is too much. And so what changed? Well, no, actually, every time the government said it was too much, the court did grant a continuance of less. So first, Ms. Cinquanto asked for, I think, 10 months to prepare. And the government said, look, she has to get time to prepare. But 10 months is two months. The judge gave her six. The same thing then happened when Mr. Pagano came into the case in April. He asked pretty much for a year. And the government said, again, continually complaining. And the judge gave him six months also, which was very reasonable. The Supreme Court said in the Zedner case that, a quote from that, Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases. Justice Alito wrote that for a unanimous court. That obviously applies here. Judge Schmell had this very difficult balancing act to follow. And he brought it home. He did the job. Because you don't have all that much time left. I mean, is it unreasonable for us to require that if it's a complex case and continues to be a complex case, and that's an independent reason all throughout, that they at least mention it in orders? No, I don't think that's unreasonable. I think that what a judge is required to say will vary depending on the case. I think there may be a- But I think it's your position that it continued to be a complex case from start to end. It did. And again, the judge from January to April relied on what the defense put forward, which was B1, the miscarriage of justice, and so did not mention complexity, then does justify the later continuance based on complexity. And I think the record's very clear about that. I think your honor is exactly correct, that in some cases, if you have a complex case designation at the beginning, and then things change as you move along the way with defendants or chargers or what have you, then certainly it would be understandable to require a district court to state reasons. Turns out, the district court did support every single continuance that happened here. The court did not really address, in the end analysis, the fact that most of the remaining defendants pled at the end of 2022. And so when you're coming, that has to have some impact on the case's complexity. The court did allude to it. That's also on page five, said the number of defendants is not the only factor, but did acknowledge it. In this case, it really wasn't a factor. Those were four minor defendants, and every piece of evidence related to those defendants killed came into evidence at the trial of Mr. Burroughs and Mr. Daugherty, because they were the ones responsible. They were ordering them to buy things for them. That's what the charges were against them. Everything related to Dr. Ambrose. So it didn't change the trial in any respect. With regard to the standard review, by the way, that Mr. Bologna mentioned, with regard to the complexity designation, the standard review is abuse of discretion, which is understandable. The court is- What's the effect, though, of failure to object on that basis alone? Well, I think what we're focused on is the June 5th speedy trial motion. And to be honest with the court, that does preserve the objection as of that time. It is very important that there's no objection before that. That goes into the Barker factors and everything else. And so that's why they can only claim that final period of a few months. And as I said, it's covered by all the orders. If I could just make one final observation. Mr. Bologna's position throughout has been that this is just unfair. You have these two conspiracies that were charged. The government should have done this differently. And the fact of the matter is Mr. Burroughs understandably moved for separate trials. He got what he wanted. He says there should be two indictments. Essentially, that's what he got. He got a separate corruption trial, separate embezzlement trial. It was the court that decided the corruption trial would go first. And that was really related to the pandemic. So even if from day one, the government had proceeded, as Mr. Bologna suggests, with two separate indictments, Doherty and Heenan in one for corruption, Doherty and Burroughs in the other for embezzlement, this case would have played out exactly the same way. Because the government, of course, could try multiple cases at the same time. We do that all the time. But Mr. Doherty can't. He's only one person. He can only be in one courtroom at one time. And so even if you had completely separate indictments of Mr. Doherty, a court would still have to decide which case goes first. And you wind up in exactly this situation. If it had been the other way around, exactly as the district court said, it'd be Mr. Heenan who'd be sitting at the table here complaining about his rights. Judge Schmelt had a typical job here, and he did his job. And he respected everyone's rights, including Mr. Doherty's rights. And there was no violation. Thank you very much. Yeah. Are the facts on the progression of this case differ from United States versus Reese? Reese, I'm sorry? Yes. I can't answer that off the top of my head. I'm happy to submit a letter if the court wishes. Well, we'll see what your opponent has to say. Okay. Thank you very much. Thank you, counsel. We'll hear rebuttal. Thank you. I don't know the facts of Reese off the top of my head, Your Honor, so I would ask for an opportunity to address that in writing as well. I do have two points I wish to make in rebuttal, if it's okay. The first is, government counsel stood up here and stated that the Declaration of Complexity carries through to trial. And there was pushback. There needs to be a lot of pushback when the government is asking for essentially a blank check at the beginning of a case that a person's litigants' speedy trial rights are essentially suspended by a Declaration of Complexity. This court can and should look at the judge's opinion in which he stated in September of 2023 why this case is complexed. As was noted, four of the eight defendants in this indictment pled out. Pled out. Their cases were over. What do you make of the response to that point, though, that the same evidence came in against your client irrespective of the pleas? I have great respect for government counsel, but I respectfully disagree with that for a myriad of reasons. Here are some. Anytime a person's statement comes in as a person who's a defendant, there are brutal issues about things that have to be redacted. Can you cross-examine the person who's having a tape play? There are issues about openings and closings and cross-examinations of four separate accomplished trial lawyers who would have added to the complexity of the case. There are evidentiary issues. There are admissibility issues. So I think to paint with the broad brush that was painted, I take issue with, and I don't think that's factually accurate, Your Honor. I would also note what is factually inaccurate is that the district court's opinion cites a confidential informant's secret recordings as a basis for why this case was complex. In fact, the trial lawyer for John Daugherty stated in January, that's not coming into the embezzlement trial at all. The district court is trying to base complexity on a fact that it knew was not going to come into the case. I have cited for you multiple cases from other districts, Ramirez, Gambino, Pikus, and I talked earlier today about third circuit case. The key is if facts, I see my time is up. May I finish my? No, no, please do. Sure. If facts and circumstances have changed, the district court has to explain why those changed facts and circumstances still justify finding a complexity. And on this record, as of January of 2023, this case was no longer complex. Thank you. Thank you, counsel. We'll take the case under advisement. We'd like to thank counsel for their excellent briefing and.